**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
ATARI INTERACTIVE, INC.,

                  Plaintiff,

                  -against-

TARGET CORPORATION,

                  Defendant.
-----------------------------------------------------------x

19-cv-3111 (LAK) (OTW)

**OPINION & ORDER**

**ONA T. WANG, United States Magistrate Judge:**

Plaintiff Atari Interactive, Inc. brings this action against Defendant Target Corporation alleging trademark infringement and counterfeiting, false designation of origin, trademark and trade dress dilution, common law unfair competition, and violations of New York General Business Law. (ECF 1). The allegations are based upon Target's creation, or authorization for the creation, and use of a game promoted as "Foot Pong" for promotional, commercial, and marketing purposes within its store. (*Id*.)

Presently before the Court is Defendant's Motion to Dismiss and/or to Transfer. (ECF 18). Specifically, Defendant seeks to dismiss Atari's trademark counterfeiting claim and Count V of Atari's complaint alleging a violation of New York General Business Law § 349, and transfer the case to the District of Minnesota. (ECF 16).

For the reasons set forth below, Defendant's motion to transfer is **GRANTED**. Because the Court finds that the District of Minnesota is the more appropriate forum, it declines to rule upon Defendant's motion to dismiss as such a ruling should be reserved for the transferee court. *See Sheree Cosmetics, LLC v. Kylie Cosmetics, LLC*, No. 18-CV-9673 (VEC), 2019 WL

1

3252752, at *2 (S.D.N.Y. July 19, 2019).

I. Background

    A. Brief Factual History

Atari is a Delaware corporation with its principal place of business in New York, New York; Target is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. (ECF 1 at 1). Atari has developed and released numerous video consoles and games beginning the 1970s and 1980s, including the videogame Pong. (*Id*. at 2). Atari has registered the Pong trademark with the United States Patent and Trademark Office in several categories. (*Id*. at 4). Atari currently licenses, markets, and/or sells products bearing the Pong trademark and imagery on various products. (*Id*. at 3).

Target is a national retailer with approximately 75 retail locations in New York state, and Atari alleges that at least some of the infringing conduct occurred in one or more of these locations. (*Id*. at 2). The current dispute arose due to Target's alleged infringement of the Pong trademark when it created – or authorized for creation – a videogame, promoted as "Foot Pong," in a limited number of its stores. (*Id*. at 4). Plaintiff's complaint only specifically mentions a store in Minnesota, but they have since stated that discovery has revealed "the device that projected the game promoted as 'Foot Pong' onto the floors of Target stores . . . was installed in Target stores nationwide, including the Plattsburgh, Saratoga Springs and Rensselaer Target stores in New York State." (ECF 44 at 1).

Thomas Schneider, a lead designer employed by Target at the time, had responsibility for the game while working at the company's headquarters in Minneapolis. (ECF 33 at 1). After his retirement in April 2018, a project manager in Minnesota named Lisa Drew took over his

responsibilities. (*Id*. at 1). Atari alleges that this videogame was similar to Pong in every way except that it was projected on the floor rather than a television screen, and was played with an individual's feet rather than hands. (ECF 1 at 4-5). Atari alleges that Target representatives referred to the game during promotional interviews as "Pong" and "Foot Pong." (*Id*. at 5). In support of this allegation, Atari provided one article in the Minneapolis/St. Paul Business Journal which ran under the headline "Target testing 'Foot Pong' game in select stores, including the NE Minneapolis location (video)," which Atari states "impl[ies] that the Target representatives quoted in the article referred to the game through use of the PONG trademark." (*Id*. at 6). Atari also alleges that consumers referred to the game as "Pong" or "Foot Pong." (*Id*. at 5-6). The goal of Target's use of the game is alleged to be to encourage customers to spend more time and money in its stores while simultaneously benefitting its reputation and goodwill with consumers. (*Id*. at 6-7). Atari states this is evidenced by the close involvement of Target's marketing department in rolling out the game. (*Id*. at 7). Lastly, it is alleged that Target's infringement was willful as it has been selling officially licensed Pong merchandise and thus cannot deny its knowledge of Atari's intellectual property rights. (*Id*.)

B. Procedural History

This suit was first brought in the United States District Court for the Central District of California, but was dropped by Atari after Target filed a motion to dismiss and/or transfer to the District of Minnesota. (ECF 16 at 3; Defendant's Motion to Dismiss or to Transfer, *Atari Interactive, Inc. v. Target Corp.*, No. 18-cv-10735-DSF (FFM), Docket No. 17-1 (C.D. Cal. Feb. 22, 2019)). On April 8, 2019, Atari filed the instant suit in this Court. (ECF 1). On May 1, 2019, Target again filed a motion to dismiss and to transfer the case to the District of Minnesota in this case.

(ECF 14; ECF 18 (amended)). The motion was fully briefed on June 3, 2019. (ECF 32). On June 11, 2019, the Court held an initial case management conference and issued discovery deadlines. (ECF 35). Over the next few months, while the motion was *sub judice*, the parties proceeded to exchange paper discovery, Atari requested a discovery extension, and Target opposed the request on the basis that Atari had not shown good cause for an extension given that it had not fully participated in discovery during the five months it had been open.[1] (ECF 35; ECF 40; ECF 41).

On November 22, 2019, Atari submitted a letter pursuant to this Court's order to explain the discovery that had taken place to date. (ECF 44 at 1). Initial productions of documents had occurred and each side was engaged in a search of relevant electronic communications to be produced. (*Id*.) Atari plans on taking four depositions of current and former Target employees, three of whom would need to be deposed in Minnesota and one unnamed 30(b)(6) witness who likely resides in or around Minneapolis. (*Id*. at 2).[2] Target has noticed three depositions for Atari employees. (*Id*. at 2-3). This District is the "home district" of two of these employees. (ECF 29 at 9).

Atari states it is still determining whether it must obtain documents and/or testimony from GestureTek, a Canadian company that co-created the "Motion Magic Projection

---

[1] Target correctly states that no limitation on discovery had been implemented.
[2] The individuals in Minnesota are: Lisa Drew, Target's current project manager on its construction team in Minneapolis; Thomas Schneider, Target's former lead designer, who now lives in St. Croix Falls, Wisconsin, which is within 100 miles of Minneapolis; and Kristy Welker, Target's former spokeswoman who now likely works at a public relations firm in the Minneapolis-St. Paul area. (ECF 44 at 2; *see, e.g.*, ECF 33). Atari acknowledges that Target's still unnamed 30(b)(6) witness likely resides in or around Minneapolis-St. Paul, but noticed the deposition for its counsel's office in New York. (ECF 44 at 2). Despite that notice, "[t]he deposition of a corporation by its agents and officers should ordinarily be take at its principal place of business." 8A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2112 (3d ed. 2019).

Experience" project with Target. (ECF 44 at 3). This company only operates out of Toronto, Canada and is not present in the United States. (*Id*.) Lastly, depending on the information gathered from the aforementioned discovery, Atari will likely produce one or more expert reports and will seek to depose any experts Target retains. (*Id*.)

II.   Discussion

   A.   This Court's Authority

Venue motions filed in the context of 28 U.S.C. § 1404(a) have been treated as non-dispositive motions that can be decided by a magistrate judge. *See, e.g., Ribail v. Bank of Am., N.A.*, No. 16-cv-04678 (AT)(SN), 2016 WL 6496258, at *2 (S.D.N.Y. Nov. 1, 2016) (quotation omitted) ("A motion for transfer of venue under 28 U.S.C. § 1404(a) is a non-dispositive motion because it can result only in the transfer of the case to another federal district, not in a decision on the merits or even a determination of federal jurisdiction."); *see also Cruz v. Decker*, No. 18-cv-9948 (GBD) (OTW), 2019 WL 6318627, at *4 (S.D.N.Y. Nov. 26, 2019) (affirming that unless a motion addresses the fundamental question of whether a case should remain in federal court, it should be treated as nondispositive). Because the parties agree that the issue in Defendant's motion to transfer is the location of the federal court that should hear Plaintiff's claim, I find that the instant motion is non-dispositive as it does not address "the fundamental question of whether a case could proceed in a federal courts." *Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008).

### B. Legal Standards

"While motions to transfer are typically considered at an early stage in a case . . . nothing bars a court from granting a motion to transfer venue at a later stage in a case." *Hamilton International Ltd. v. Vortic LLC*, No. 17-cv-5575 (AJN) (OTW), 2019 WL 4747815, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006)). Yet, "[t]he timing of a motion to transfer venue, although not by itself normally dispositive, is relevant." *Commercial Union Ins. Co. v. Emery Air Freight Corp.*, No 92-cv-6513, 1995 WL 232757 (S.D.N.Y. Apr. 11, 1995).

A district court may transfer a case "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Court has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). "Among the factors to be considered . . . are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quotations omitted). "Courts have also considered familiarity with the governing law and judicial economy in making transfer determinations." *Vortic*, 2019 WL 4747815, at *7 (citation omitted).

"There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the Court's

6

discretion." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted). Additionally, "the party requesting transfer carries the burden of making out a strong case for transfer." *New York Marine*, 599 F.3d at 113-14 (quotation omitted) (applying a "clear and convincing" standard to a motion to transfer).

### C. Analysis

As a preliminary matter, Defendant has demonstrated that this case could have been brought in the District of Minnesota. Defendant is subject to personal jurisdiction in Minnesota because it is incorporated and has its principal place of business in Minnesota and Atari does not contest that the case could have been brought that district. Additionally, Target filed the instant motion to transfer very early in this case, as it did when Atari filed in California, less than one month after Atari filed its Complaint, and very little has happened during litigation in this District. (ECF 14). *Royal & Sun All. Ins., PLC. v. Nippon Express USA, Inc.*, 202 F.Supp.3d 399, 411 (S.D.N.Y. 2016) ("When a case is in its earliest stages, it is generally not inefficient to transfer the case").

#### 1. Locus of Operative Facts

This case apparently arose from events and statements about those events that occurred in a Minneapolis store and in a news article published by the Minneapolis/St. Paul Business Journal. While Atari has stated that the "the device that projected the game promoted as 'Foot Pong' onto the floors of Target stores . . . was installed in Target stores nationwide, including the Plattsburgh, Saratoga Springs and Rensselaer Target stores in New York State," (ECF 44 at 1), it does not state whether this projector is used solely for the game at issue or whether other games/media are loaded onto it, and relatedly, does not provide additional

7

information regarding whether the game was actually projected or promoted at those stores. Target also did not develop the intellectual property at issue in this District. Accordingly, it does not appear that the operative facts occurred within this District and the Court finds that this factor weighs in favor of transfer.

### 2. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight[.]" *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998) (citations omitted). "Where the factors are equally balanced, the plaintiff is entitled to its choice. Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim." *Id*. at 659 (citation omitted). "That choice, however, is accorded significantly less weight if it is the product of forum shopping." *Price v. Stossel*, No. 07-cv-11364 (SWK), 2008 WL 2434137, at *7 (S.D.N.Y. June 4, 2008). Additionally, "the emphasis placed by a court on this choice diminishes where the operative facts upon which litigation is brought bear little material connection to the chosen forum." *Berman*, 30 F.Supp.2d at 659 (citation omitted).

On this record, the Court cannot find that Atari has engaged in forum shopping to the degree implied by Defendant in its brief. In *Price v. Stossel*, the court held that "[i]n light of [plaintiff's] residence outside the Southern District of New York, and his apparent strategic refiling in this District [to avoid an immediate-appeal provision of California's anti-SLAPP statute], the Court accords no weight to [plaintiff's] most recent choice of forum." *Price*, 2008 WL 2434137, at *7 (S.D.N.Y. June 4, 2008). Similarly, the court in *Mohsen v. Morgan Stanley & Co. Inc.* held that "[p]laintiff's choice of forum is entitled to little weight, because it is obvious

8

that his decision to re-file this action in New York – after stripping out all references to California from his original complaint – was the product of forum shopping; the locus of operative facts is in the Central District of California; and this is not Plaintiff's home forum." No. 11-cv-6751 (PGG), 2013 WL 5312525, at *8 (S.D.N.Y. Sept. 23, 2013).

Here, Atari has its corporate headquarters in this District. While it initially filed an infringement suit against Target concerning the "Foot Pong" game in the Central District of California, which suggests forum shopping, the mere fact alone that Atari decided to re-file in the district where it maintains its headquarters is not clearly indicative of forum shopping. As stated above, however, the operative facts in this case did not occur within this District. As discussed, and for the reasons outlined below, this Court's analysis of the factors does not find that they are "equally balanced." *Berman*, 30 F.Supp.2d at 659 (citation omitted). Thus, the Court affords Plaintiff's choice of forum less weight.

### 3. Convenience of Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statue." *In re Nematron Corp. Sec. Litig.*, 30 F.Supp.2d 397, 400 (S.D.N.Y. 1998) (internal quotation and citations omitted). "The convenience of witnesses, in particular, is often cited as the most important factor." *Pence v. Gee Group, Inc.*, 236 F.Supp.3d 843, 856 (S.D.N.Y. 2017) (citing cases). "In an infringement action, the most critical witnesses may be 'those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products.'" *ESPN, Inc. v. Quiksilver, Inc.*, 581 F.Supp.2d 542, 548 (S.D.N.Y. 2008) (citing *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F.Supp.2d 525, 529 (S.D.N.Y. 2004)). "In evaluating this factor, the court should look beyond the quantity of witnesses and

assess the quality of the testimony to be offered." *DealTime.com Ltd. v. McNulty*, 123 F.Supp.2d 750, 755 (S.D.N.Y. 2000) (internal quotation and citations omitted).

Thus, the movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) (citations omitted), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579, 585-86 (2d Cir. 1990). However, "a specific showing is required only when the movant seeks a transfer *solely* 'on account of the convenience of witnesses.' . . . [If the movant] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original) (quoting *Factors Etc.*, 579 F.2d at 218).

Here, the basis of Target's motion does not solely rely on this factor. Thus, there is no strict requirement for it to clearly specify key witnesses and provide a general statement of what their testimony will cover.

Atari concedes that three of Target's current or former employees will likely be deposed in Minnesota. Further, Target's 30(b)(6) witness likely resides in the Minneapolis-St. Paul area. Indeed, two of the Target employees to be deposed in Minnesota are individuals directly involved in the project that resulted in the only documented instance of Target's use of the "Foot Pong" game in Minnesota.[3] On the other hand, two of Atari's witnesses are located in the Southern District of New York. Accordingly, because most of the witnesses, and the key witnesses in particular, are located in Minnesota, this Court finds that this factor weighs in favor

---

[3] This instance was documented, as noted above, in a Minnesota periodical. Presumably, if Atari seeks to depose the journalist who wrote the article, his deposition would also have to take place in Minnesota pursuant to a subpoena.

of transfer.

### 4. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

"Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, it nonetheless retains some relevance to the venue inquiry." *Price*, 2008 WL 2434137, at *5 (citing *In re Hangar Orthopedic Grp., Inc. Sec. Litig.*, 418 F.Supp.2d 164, 170 (E.D.N.Y. 2006); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F.Supp.2d 392, 396-97 (S.D.N.Y. 2006)).

Target has not demonstrated that relevant evidence other than witnesses weighs decisively in favor of transfer. It only argues that the allegations are rooted in actions that took place in Target's headquarters, but does not explain why producing relevant documents in New York would be any more difficult to do in Minnesota. Atari's key documents, such as licensing agreements, revenue information, and "other materials" are located in this District, but again, Atari has not shown that producing such documents in Minnesota would be any more difficult than producing them in New York. Accordingly, the Court finds this factor is neutral.

### 5. Convenience of Parties

Transferring this case to Minnesota, where the operative facts occurred, and where Target is headquartered, is clearly the more convenient forum for Defendant. While Atari is headquartered in New York, its decision to initially file this case in California demonstrates that litigating this case outside of this District is not inconvenient for it. Accordingly, this factor weighs in favor of transfer.

6. **Availability of Process to Compel the Attendance of Unwilling Witnesses**

"Pursuant to Federal Rule of Civil Procedure 45(c)(1)(A), a court cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state." *Pence*, 236 F.Supp.3d at 857. Although "[t]here [may be] no reason to believe there will be any witnesses that require a subpoena in [a] case . . . it is most likely that the majority of the witnesses called will be [out of state] residents . . . [and] the ability to compel those witnesses, if necessary, favors transfer." *Cower v. Albany Law School of Union University*, No. 04-cv-0643 (DAB), 2005 WL 1606057, at *3 (S.D.N.Y. July 8, 2005).

Here, many of the key witnesses reside in Minnesota, and some are not currently Target employees. Thus, as discussed earlier, this factor weighs in favor of transfer.

7. **Relative Means of the Parties**

"[T]his factor is entitled to little weight where both parties are corporations." *Student Advantage, Inc. v. International Student Exchange Cards, Inc.*, 2000 WL 1290585, at *8 (S.D.N.Y. Sept. 13, 2000). Both Target and Atari are large corporations. Accordingly, this factor is neutral and does not support either granting nor denying the motion to transfer.

8. **Forum's Familiarity With the Governing Law**

"A forum's familiarity with the governing law . . . is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 405 (S.D.N.Y. 2004). "Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action." *NBA Properties, Inc. v. Salvino, Inc.*, 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000) (internal quotations omitted); *see also American Eagle Outfitters, Inc. v. Tala*

*Bros. Corp.*, 457 F.Supp.2d 474, 479 (S.D.N.Y. 2006) (state law claims related to Lanham Act supported retention of venue). However, "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." *Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, No. 06-cv-395, 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (finding the factor neutral). Concerning federal law claims, federal courts in both this District and the District of Minnesota are equally familiar with the legal principles necessary to resolve this case.

Here, Atari has brought claims under federal and New York state law.[4] Accordingly, this factor weighs slightly against transfer.

### III.   Conclusion

In balancing the relevant factors, the Court finds that the locus of operative facts, the convenience of witnesses, the convenience of the parties, and the availability of process to compel the attendance of unwilling witnesses all weigh in favor of transfer. The remaining factors, plaintiff's choice of forum, the location of relevant documents and the ease of access to sources of proof, the relative means of the parties, and the forum's familiarity with the governing law, are either neutral or only weigh slightly against transfer. Accordingly, the Court finds that Defendant has made a meritorious motion to transfer this case in its entirety.

The Court will delay issuing the order of transfer however, until after December 24, 2019, to allow Plaintiff to seek a stay in the event he seeks review of this Opinion and Order pursuant to Federal Rule of Civil Procedure 72(a) and chooses to make a motion for a stay

---

[4] The Court also notes that Atari's voluntarily dismissed California action did not raise any specific state law claims. (*See* Complaint, *Atari Interactive, Inc. v. Target Corp.*, No. 18-cv-10735-DSF (FFM), Docket No. 1 (C.D. Cal. Dec. 28, 2018)).

pending that review.[5] In the absence of an order granting such a stay, however, the Court will direct the Clerk, by separate order issued after December 24, 2019, to effectuate the transfer.

**SO ORDERED.**

Dated: New York, New York
December 10, 2019

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge

---

[5] Any motion for a stay should be made in the first instance to the undersigned. The Court's pre-motion conference requirement is waived for such a motion.